**UNITED STATES of America,**
**Appellee,**

v.

**Trevor Livingston THOMPSON, a/k/a Robert G. Foster, a/k/a Tevor Johnson, Defendant–Appellant.**

**Docket No. 00–1161.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 11, 2000.

Decided Sept. 25, 2000.

Edward C. O'Callaghan, Assistant U.S. Attorney, Southern District of New York (Mary Jo White, U.S. Attorney, Andrea L. Labov, Assistant U.S. Attorney, of counsel), New York, NY, for Appellee.

David A. Lewis, Legal Aid Society, Federal Defender Division (Barry A. Leiwant, Legal Aid Society, Federal Defender Division, of counsel), New York, NY, for Defendant–Appellant.

Before: FEINBERG, CABRANES, and PARKER, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

The question presented is whether the District Court erred in imposing a $5000 fine on an indigent defendant who will also serve 120 months' imprisonment and who will be subject to deportation when he is released from prison.

This appeal follows the February 28, 2000 conviction of Trevor Livingston Thompson in the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*) for reentering the United States after having been deported subsequent to the commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).[1] Section 1326(b)(2) provides for a fine pursuant to Title 18, and/or imprisonment of up to 20 years, for persons "whose removal was subsequent to a conviction for commission of an aggravated felony."[2] In 1994,

---

1. 8 U.S.C. § 1326(a) and (b)(2) provide in relevant part:

   **(a) In general**
   Subject to subsection (b) of this section, any alien who—
   　(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
   　(2) enters, attempts to enter, or is at any time found in, the United States ...
   shall be fined under Title 18, or imprisoned not more than 2 years, or both.
   **(b) Criminal penalties for reentry of certain removed aliens**

   Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—
   　...
   　(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under [Title 18], imprisoned not more than 20 years, or both....

2. The relevant provision is 18 U.S.C. § 3571(b)(3), which states:
   **(b) Fines for individuals.**—Except as provided in subsection (e) of this section, an individual who has been found guilty of an offense may be fined ...
   　...

Thompson was convicted and sentenced to 13 months' imprisonment for bank fraud. He was deported in 1996 on completion of that sentence, and he illegally reentered the country in 1997.

Following Thompson's guilty plea the District Court sentenced him principally to 120 months' imprisonment to be followed by three years' supervised release. Applying U.S.S.G. § 5E1.2[3] and exercising its discretion to depart downward, the District Court also imposed a $5000 fine. Because Thompson was determined at sentencing to be indigent, the Court established a schedule of payments whereby Thompson must remit $25 per quarter from his prison earnings[4] and make monthly payments of 10% of his earnings following his release, until the $5000 fine is satisfied. In addition, as one of the conditions of Thompson's supervised release, the Court ordered Thompson to "comply with immigration laws and cooperate with the U.S. Immigration and Naturalization Service," as a result of which he will presumably be deported. In an amended judgment entered on March 15, 2000, the District Court granted Thompson's request that interest on the fine be waived, on the ground that Thompson does not have the ability to pay the interest.

■ On appeal, Thompson argues that, because he is indigent, the District Court erred in imposing the $5000 fine. We review the District Court's findings of fact for clear error, *see, e.g., United States v. Shepardson*, 196 F.3d 306, 309 (2d Cir. 1999), and conclude that the District Court did not err in determining that Thompson can pay a $5000 fine.

**I.**

■ Section 5E1.2(a) of the Sentencing Guidelines provides that a District Court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." This provision imposes on the defendant the burden of establishing indigence, which he may satisfy either by independent evidence or by reference to the Presentence Report ("PSR"). *See, e.g., United States v. Wong*, 40 F.3d 1347, 1383 (2d Cir.1994). Evidence of present indigence by itself, however, is not an absolute barrier to the imposition of a fine. *See, e.g., United States v. Corace*, 146 F.3d 51, 56 (2d Cir. 1998). On the contrary, a fine may be imposed on a defendant who is presently indigent if the record contains evidence of his capacity to pay the fine from prison earnings, *see, e.g., United States v. Hernandez*, 85 F.3d 1023, 1031 (2d Cir.1996), or from earnings after his release from prison, *see, e.g., Corace*, 146 F.3d at 56.

■ While the PSR indicated that Thompson was unable to pay the fine at the time of sentencing, the District Court did not clearly err in concluding that Thompson would be able to pay part of the $5000 out of prison earnings and that he could satisfy the balance out of his earnings following his release from prison. Thompson has a General Equivalency Diploma and has held jobs as a cab driver, a garment factory worker, and a groom at a racetrack. Upon his release, Thompson will have no other financial obligations that would render it difficult for him to pay the fine. Although he has two teenage sons, they will be in their late twenties or early

---

(3) for a felony, not more than $250,000.

3. U.S.S.G. § 5E1.2(c)(3) provides for a fine range of between $7500 and $75,000 for offense levels of 20–22. The Court determined that Thompson's base offense level was 21.

4. The Court's schedule provides that if Thompson participates in a UNICOR program, he must pay 50% of his monthly UNICOR earnings. UNICOR is the trade name

for Federal Prison Industries, Inc., a government corporation that provides work and training opportunities for federal inmates. *See* 28 C.F.R. § 345.11(a). Thompson argues that he will not be eligible for UNICOR. We do not address this disagreement because the District Court's judgment provides for payments from UNICOR earnings only in the alternative.

data:image/webp;base64...

thirties when he is released, and are not likely to be his dependents by then.

■ Thompson argues that he "will never be able to pay a $5000 fine before he is deported." Appellant's Brief at 13. In response, the government argues that Thompson's obligation to pay the fine does not end upon his deportation, drawing our attention to 18 U.S.C. § 3613(b), which states that "[t]he liability to pay a fine shall terminate the later of 20 years from the entry of judgment or 20 years after the release from imprisonment ... or upon the death of the individual fined." *See* Appellee's Brief at 19 n.**. The government's argument is sound. Nothing in this statutory provision or in 18 U.S.C. § 3571(b)(3), which sets forth the applicable maximum fine, exempts persons who are deported from liability for the payment of fines. Indeed, the purpose of 8 U.S.C. § 1326(a) and (b)(2) is precisely to punish persons who have illegally reentered the country, and therefore these provisions specifically contemplate the imposition of fines upon defendants who will undoubtedly be deported, either immediately or when they complete their prison sentences.

In reaching our conclusion, we note that we and our sister circuits have affirmed sentences imposing fines where the defendant would be deported immediately upon conviction or upon release from prison. *See, e.g., United States v. Kassar,* 47 F.3d 562, 564, 567–68 (2d Cir.1995) (upholding sentence consisting in part of 16 months' imprisonment, $34,600 in restitution, and a $2,000 fine, where indigent defendant would be deported immediately upon release from prison), *abrogated on other grounds, Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *see also Malek v. INS,* 198 F.3d 1016, 1018 (7th Cir.2000) (upholding sentence of 12 months' imprisonment and over $80,000 in restitution where deportation proceedings began immediately after conviction); *United States v. Wittgenstein,* 163 F.3d 1164, 1170–71, 1173 (10th Cir.1998) (affirming both deportation order and sentence of,

*inter alia,* 18 months' imprisonment and $30,000 fine); *United States v. DeBarge,* 434 F.2d 57, 58 (3d Cir.1970) (per curiam) (upholding fines of $1,000 imposed on two defendants who were also deported immediately). In addition, in an analogous situation, we have held that district courts lack discretion to order the tolling of a period of supervised release during the time that a deported person spends outside the United States, despite the fact that "supervision" of someone outside the country is effectively impossible, because the statute in question does not expressly provide for such tolling. *See United States v. Balogun,* 146 F.3d 141, 144–45 (2d Cir.1998). In the present case, the applicable statute does not create for deported persons an exception to the requirement that a fine be paid; on the contrary, it imposes fines on persons who will surely face deportation.

■ Similarly, nothing in U.S.S.G. § 5E1.2 suggests that deportation extinguishes an obligation to pay a fine. Deportation is simply one of the "equitable considerations" that a Court may take into account in assessing a defendant's ability to pay. *See* U.S.S.G. § 5E1.2(d)(8) ("In determining the amount of the fine, the court shall consider ... (8) any other pertinent equitable considerations."). Here, the District Court took into consideration Thompson's pending deportation in deciding whether to impose a fine, and in determining the amount of that fine. That the Court did so is clear from its requirement that Thompson "comply with immigration laws and cooperate with the U.S. Immigration and Naturalization Service" upon his release.

Perhaps Thompson means only to suggest that it will be more difficult for him to pay the fine from whatever earnings he has in Jamaica—just as it will be more difficult for the government to collect the fine outside of the United States. However, neither consideration has prompted Congress to exempt deported persons from liability for fines imposed upon them as a result of conviction for illegal reentry.

In short, Judge Cote did not err, much less clearly err, in concluding that Thompson would be able to earn enough money, during and after his imprisonment, to pay a $5000 fine. In the event that this conclusion subsequently proves incorrect, we note that Thompson may assert his continuing indigence as a defense to any effort by the government to collect the fine. *See, e.g., Wong*, 40 F.3d at 1383.

## II.

For these reasons stated above, the judgment of the District Court is affirmed.